UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LUIS OLIVERA,
Plaintiff,

vs.

UNITED STATES OF AMERICA,
Defendant.

C.A. No. 06-412-S

**MEMORANDUM AND ORDER**

William E. Smith, United States District Judge.

Petitioner Luis Olivera has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (2000). For reasons stated below, that motion is denied.

I. BACKGROUND AND TRAVEL

On August 6, 2003, a federal grand jury in the District of Rhode Island returned a three-count indictment charging Olivera and a co-defendant Robert Camera with: (1) conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I); (2) distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II) and (3) possession of four handguns as convicted felons, in violation of 18 U.S.C. §§ 922(g)(1) and 2 (Count III). Throughout all proceedings (except as noted below), Olivera was represented by court-appointed counsel, Attorney Edward Roy.

On the eve of jury empanelment for trial, Olivera agreed to plead guilty. The Court postponed consideration of certain pretrial motions, including a motion to sever the trials of the two co-defendants, pending the submission of a plea agreement. The following morning counsel reported that Olivera had changed his mind and wanted to go to trial. Jury empanelment commenced, but a short time later, Olivera changed his mind again and decided to plead guilty.[1] The Court sent the newly empaneled jury out of the courtroom in order to deal with Defendant's latest course correction.

Olivera and his attorney signed a plea agreement in which Olivera agreed to plead guilty to Counts II (cocaine distribution) and III (felon in possession) and the Government agreed to move for the dismissal of Count I (drug conspiracy) and to recommend a two-level reduction in the offense level upon Olivera's acceptance of responsibility. (Plea Agreement at ¶¶ 1, 2 and 13.) The plea agreement further provided that if Olivera violated any of its provisions, the Government would be released from its obligations under the agreement. (Id. at ¶ 9.)

At the change of plea hearing, the Government recited the following offense facts (see generally Transcript of Change of Plea Hearing conducted on October 1, 2003 ["Plea Tr."] at 15-25):

---

[1] Co-defendant Camera likewise vacillated but ultimately decided to plead guilty and was sentenced separately.

Olivera and Allan Bartelson of Vermont had a longstanding arrangement whereby Bartelson would supply Olivera with guns in exchange for cocaine from Olivera. Bartelson was eventually arrested with cocaine while driving back to his home and agreed to cooperate against Olivera. On July 1, 2003, Bartelson made a recorded phone call to Olivera in which the two agreed that Bartelson would provide Olivera with four handguns but that Olivera would give him less than the standard amount of cocaine in return because the guns were stolen. In a July 10 recorded call, Olivera told Bartelson that he only had enough cocaine to buy two of the guns and that he would give Bartelson one and a half ounces for each gun if Bartelson also contributed $2,000 in cash.

On July 11, after further negotiations by telephone, Olivera agreed to trade the cocaine for four guns, instead of the two guns and cash mentioned earlier. Olivera then dispatched his co-defendant Camera to the agreed rendezvous point (a grocery store parking lot) with the cocaine. Officers saw Camera leave Olivera's residence at 81 Hawkins Street in Providence on a bike and arrive at the parking lot, where he had a conversation with Bartelson and an undercover agent who accompanied Bartelson. Camera said that he represented "Louie." Bartelson and the agent expressed concerns about dealing with Camera instead of Olivera. After another phone conversation between Bartelson and Olivera, Camera gave Bartelson the cocaine, and the agent placed the four guns in Camera's

backpack. As Camera rode off on his bike, he was arrested. Olivera was arrested at his residence shortly thereafter and admitted his involvement in the drugs-for-guns transaction. Olivera had a prior felony record.

After the Government completed its summary of the facts, the Court asked Olivera if he agreed that these were the facts of his case. Olivera responded, "No" and stated, "Those aren't all the facts." (Plea Tr. at 25-26.) The Court then stated: "There may be other facts, but as to those facts that [the prosecutor] recited, do you agree that those facts are, in fact, true?" (Id. at 26.) Olivera agreed that the facts in the Government's summary were all true. (Id.) The Court then suggested that Olivera consult with his counsel before providing any additional facts, but after doing so, Olivera stated there were no other facts. (Id. at 26-27.) Olivera then pleaded guilty to Counts II and III.

The Presentence Report ("PSR") provided additional details concerning the July 11 transaction, including admissions by both Olivera and Camera. After his arrest, Camera told an agent that he had obtained the cocaine from Olivera and was directed by Olivera to meet a man [and] a woman at the Stop & Shop parking lot to trade the cocaine for four guns and that Olivera had promised to pay Camera $100 for this service. (PSR ¶ 10.) Shortly after his arrest Olivera admitted that he had arranged the drugs-for-guns deal with

Bartelson and used Camera as a courier to deliver the cocaine and retrieve the guns. (<u>Id.</u>)

The PSR calculated a Guideline sentencing range of 92 to 115 months for Counts II and III, based on a combined offense level of 26 and a criminal history category IV. The offense level included a two-level enhancement pursuant to USSG § 2K2.1(b)(1)(A), because the total number of guns involved was between three and seven, and a four-level enhancement under USSG § 2K2.1(b)(5), because the guns were possessed in connection with another felony offense (the drug sale). (PSR ¶¶ 31-32.)

Counsel for Olivera filed objections to (1) the proposed four-level enhancement under USSG § 2K2.1(b)(5), and (2) the inclusion of 137.5 grams of cocaine from a prior drug transaction between Olivera and Bartelson. Olivera did not object to any other portion of the PSR.

Before his sentencing hearing, Olivera sought to dismiss his counsel and to vacate his guilty pleas. After hearing on December 15, this Court denied Attorney Roy's motion to withdraw and re-scheduled the sentencing hearing to January 16, 2004. Thereafter, Olivera attempted to file *pro se* a motion to vacate his guilty pleas as to Counts II and III. In view of this motion and further disagreement with his client, Attorney Roy renewed his motion to withdraw as Olivera's counsel. After a hearing on January 16, 2004, this Court granted the motion to withdraw and permitted

Olivera to proceed *pro se*, with Attorney Roy acting as standby counsel. A hearing on Olivera's *pro se* motion to vacate guilty pleas and on sentencing was scheduled for February 13, 2004.

At the February 13 hearing, the Government assented to the vacating of Oliveira's guilty plea as to Count II only, and the Court vacated Olivera's plea as to that count. (See Transcript of Hearing conducted on February 13, 2004 ["2/13/04 Sent. Tr."] at 4-5.) After hearing argument from Olivera *pro se* and the Government, this Court denied Olivera's motion to vacate his plea as to Count III. (Id. at 28.)

The hearing then proceeded to sentencing. At this point, the Government moved to dismiss Counts I and II, the drug charges, with prejudice, and the Court granted that motion, leaving only Count III, the gun offense. (Id. at 30-33, 95.) Shortly after the sentencing hearing began, Olivera changed his mind again and elected to have Attorney Roy represent him directly. (Id. at 46.) Attorney Roy represented Olivera for the balance of the sentencing hearing, which occurred over two days.

The sentencing hearing focused on Olivera's objection to the four-level enhancement proposed in the PSR.[2] The Government called three witnesses in connection with this issue. Bartelson testified that beginning in about 2001, he traveled from Vermont on a regular

---

[2] The second objection concerning the amount of cocaine attributed to Olivera for sentencing purposes was not pressed at the sentencing hearing.

basis to obtain cocaine from Olivera, trading guns and/or money for the cocaine and that when he was arrested with cocaine on June 18, 2003, he had just obtained that cocaine from Olivera in exchange for a .9 mm pistol and $1,600 in cash. (Id. at 55-71, 84-87.) Bartelson also described the events surrounding the July 11, 2003 controlled transaction in which Olivera ultimately agreed to trade Bartelson cocaine in return for four handguns. (Id. at 71-80.) A Vermont police officer provided corroborating details concerning the June 18 transaction. (Id. at 35-45.) An ATF agent provided corroborating details concerning the July 11 transaction. (See Transcript of Sentencing Hearing conducted on February 19, 2004 ["2/19/04 Sent. Tr."] at 4-18.) The Government also introduced as exhibits: (1) laboratory reports concerning the cocaine recovered on June 18 and July 11; (2) a transcript of the July 10 conversation between Olivera and Bartelson; and (3) a transcript of a videotape of the July 11 deal in the parking lot.

Attorney Roy cross-examined all witnesses and introduced two exhibits (affidavits of the co-defendant Camera and a neighbor) on behalf of Olivera, and argued his objection, contending that Olivera only constructively possessed the guns through Camera, his agent, and Camera himself never possessed the cocaine and guns simultaneously.

At the conclusion of the hearing, this Court found that on the basis of the evidence presented there was "overwhelming" evidence

that Olivera's firearm possession was "in connection" with the July 11 drug distribution and that it was also part of a broader drugs-for-guns conspiracy between Olivera and Bartelson. (2/19/04 Sent. Tr. at 32-34.) The Court then imposed a sentence of 115 months imprisonment -- near the high end of but well within the applicable guideline range -- and stated the reasons for its sentence. (Id. at 34-40.)

Olivera appealed his sentence, contending inter alia: (1) that his four-level sentencing enhancement under USSG 2K2.1(b)(5) should be reversed because the guns were not possessed in connection with the cocaine and that he never "possessed" the guns; and (2) that his trial counsel rendered ineffective assistance by failing to challenge the two-level enhancement based on the number of firearms involved in the offense. The Court of Appeals affirmed the conviction, rejecting Olivera's claims and ruling that the ineffective assistance claim was premature and could be advanced by a motion under 28 U.S.C. § 2255. United States v. Olivera, 145 Fed. Appx. 686 (1st Cir. 2005) (unpublished). Olivera did not seek further review.

§ 2255 Motion to Vacate

The instant § 2255 motion to vacate was timely filed in September 2006. In his motion and supporting papers Olivera

asserts nine claims as follows:[3] (1) that his guilty plea was not knowing, intelligent and voluntary because this Court did not adequately describe the consequences of his term of supervised release pursuant to Fed. R. Crim. P. 11(b)(1); (2) that his guilty plea was not knowing, intelligent and voluntary because the element of "knowing possession" as to the firearm offense was not adequately described at his plea colloquy; (3) that he was "entrapped" to the extent that his sentence was based on the sale of four guns, because he originally intended to trade the drugs for only two guns; (4) that the evidence did not support the conviction because the firearms in issue were prop firearms not designed to shoot bullets; (5) that his sentence was improperly enhanced because this Court used relevant conduct from Counts I and II, which had been dismissed with prejudice; (6) that this Court abused its discretion in dismissing Counts I and II but not Count III, because Count III was dependent on Count II; (7) that the Government breached the plea agreement by failing to recommend a two-level reduction provided for in that agreement; (8) that his counsel was ineffective for failing to conduct an adequate cross-examination concerning, or otherwise challenging, the number of

---

[3] For clarity, Olivera's claims are presented in the order set forth in the memorandum of law accompanying his motion to vacate (see Memorandum of Law in support of Motion under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ["Pet. Mem."]), with the exception of his ineffective assistance claims, which are described last.

firearms attributed to Olivera; and (9) that counsel was ineffective because he misled Olivera to believe that there was a video surveillance tape made by agents of him and his co-defendant Camera when in fact there was none.

The Government has filed a response, and Olivera thereafter filed a reply and amended reply. The matter is ready for decision.[4]

## II. DISCUSSION

The pertinent section of § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

---

[4] Olivera has requested counsel to present his § 2255 claims (Pet. Mem. at 1), but it is well settled that there is no right to counsel in connection with applications for postconviction relief, and counsel is not otherwise warranted here. See Ellis v. United States, 313 F.3d 636, 652-53 (1st Cir. 2002) (no constitutional right to counsel in habeas cases and appointment of counsel was not otherwise warranted) (citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)).

Likewise, there is no need for a hearing in this matter, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989) (no hearing is required where the district judge is thoroughly familiar with the case).

> law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255, ¶ 1.

Generally, the grounds justifying relief under 28 U.S.C. § 2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. United States v. Addonizio, 442 U.S. 178, 184-185 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Id. at 185 (internal citation and quotations omitted).

Moreover, a motion under § 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" or, alternatively, that he is "actually innocent" of the offenses for which he was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). See Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). However, claims of ineffective assistance of counsel are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

As discussed below, none of the claims raised by Olivera entitles him to relief.

A. Procedurally Defaulted Claims

As a threshold matter, the Court notes that several of Olivera's claims could have been raised on direct appeal but were not -- or were, in fact, raised and rejected by the Court of Appeals -- and thus are procedurally defaulted here.

First, as the Government points out, Olivera's claims that his guilty plea was not knowing, intelligent and voluntary because this Court did not adequately describe either the consequences of his term of supervised release or the element of "knowing possession" in the firearm offense (Pet. Mem., Claims 1, 9) could have been raised on direct appeal but were not, and such claims may not be raised in this collateral proceeding absent cause and prejudice or a showing of actual innocence. See Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005) (voluntariness of guilty plea may be questioned on collateral review under 28 U.S.C. § 2255 "only if, and to the extent that, the plea has been challenged on direct appeal") (citing Bousley, 523 U.S. at 621).[5] In his papers, Olivera shows neither cause nor prejudice in connection with his failure to raise these claims on appeal, nor does he assert his actual innocence. He does not deny that he committed the conduct

[5] In Oakes, the Court of Appeals reversed the denial of relief under § 2255 based on procedural default raised *sua sponte* by the district court, holding that a movant must be given notice and opportunity to show why his postconviction claims should not be procedurally defaulted. 400 F.3d at 98-99. Here, the Government raised this defense, and Olivera addressed it in his Reply.

charged but merely questions whether that conduct constituted "possession" of the firearms so as to violate the statute.

Even if they could be asserted here, both claims are without merit. In the plea colloquy this Court specifically advised Olivera that the maximum penalty included ten years imprisonment and supervised release for three years to life and asked him whether he understood the concept of supervised release. Olivera responded he did. (See 2/19/04 Sent. Tr. at 8-9.) This adequately comported with the requirements of Fed. R. Crim. P. 11(b)(1).

Contrary to Olivera's contention, this Court's failure to specifically mention the potential for re-incarceration if he violated the terms of his supervised release did not violate his substantial rights, see Fed. R. Crim. P. 11(h), as he has not shown that had he been specifically advised, he would not have pled guilty. The record reflects that the evidence against Olivera presented at sentencing was overwhelming and that he had consulted with his counsel extensively regarding his guilty plea, given his vaccilation regarding that plea.[6]

---

[6] Case law cited by Olivera suggests that a court's failure to advise a defendant at plea colloquy that (1) his sentence could include supervised release and (2) violating the conditions thereof could result in additional incarceration may violate the defendant's substantial rights, where the combined imprisonment and supervised release actually imposed exceeds the statutory maximum imprisonment term for the offense. See United States v. Thorne, 153 F.3d 130, 133-134 (4th Cir. 1998), United States v. Raineri, 42 F.3d 36, 42 (1st Cir. 1994). However, these decisions are distinguishable and do not assist him here. First, both involve direct appeals from convictions, rather than applications for

The claim alleging an inadequate description of the element of "knowing possession" as to the firearm offense (claim 9) is simply a re-casting of Olivera's unsuccessful argument seeking to vacate Count III, which this Court previously rejected.

Second, Olivera's claim that the Government breached his plea agreement by failing to recommend a two-level reduction guideline for acceptance of responsibility, as contemplated by the plea agreement (Pet. Mem., claim 2), likewise could have been raised on direct appeal but was not. Again, he has failed to make any showing of cause or prejudice in connection with that omission. Moreover, Olivera's attempt to vacate his guilty pleas as to Counts II and III and his failure to submit a statement accepting responsibility obviated the Government's obligation to perform in this regard. (See Plea Agreement at ¶ 9, providing that Government's obligations were contingent upon performance of Olivera's obligations.)

Third, the claim that Government agents engaged in "sentencing entrapment" by putting four guns in Camera's backpack, when Olivera intended to purchase only two guns, and that this illegally raised his sentencing level (Pet. Mem., claim 3), likewise could have been

---

postconviction relief. Moreover, in both cases, the district court failed to make any mention of supervised release prior to the defendant's plea. See Thorne, 153 F.3d at 132-33, Raineri, 42 F.3d at 38. The decisions from other circuits cited by Olivera are likewise distinguishable for similar reasons.

raised on direct appeal but was not. This claim is flatly contradicted, in any event, by the plea colloquy at which Olivera agreed to the Government's recitation that he agreed to buy four guns rather than two (see Plea Tr. at 18-19, 20-21, 26), and by the facts recited in the PSR (at ¶ 10), to which Olivera did not object. The Court of Appeals also rejected this argument. See Olivera, 145 Fed. Appx. at 687, n.*.

Other claims by Olivera that could have been raised on direct appeal, but were not, include his claim that the evidence did not support a conviction because the firearms involved were only "prop" firearms (Pet. Mem., claim 6), and the claim that this Court abused its discretion by vacating the plea to Count II without permitting him to vacate his plea to Count III (claim 8). Olivera has shown neither cause nor prejudice in connection with his failure to raise these claims, see Bousley, 523 U.S. at 622, and both are meritless. Olivera does not contend that the prop nature of the firearms constitutes newly discovered evidence, and this claim is foreclosed by Olivera's admission to the Government's recitation at plea that the four firearms Olivera agreed to purchase were operable firearms, able to fire a bullet. (See Plea Tr. at 18, 26.) Separately, this Court fully explained its reasons on the record for vacating Olivera's plea as to Count II but not Count III (2/13/07 Sent. Tr. at 24-28), and Olivera points to no legal authority that this Court abused its discretion in doing so.

Finally, Olivera's claim that his sentence was somehow "unconstitutionally enhanced" because this Court used relevant conduct from dismissed Counts I and II to enhance his sentence under Count III (claim 7) is in essence a re-hash of his objections to his four-level sentencing enhancement based on the use of a firearm in connection with another felony (the drug deal), which challenge was rejected both at sentencing (2/19/07 Sent. Tr. at 32-34) and on appeal, see Olivera, 145 Fed. Appx. at 687 (rejecting argument that there was no connection between firearms and cocaine). Thus, that claim may not be asserted here. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) (issues disposed of in any prior appeal will not be reviewed again by way of a § 2255 motion) (quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967)); Argencourt v. United States, 78 F.3d 14, 16 n.1 (1st Cir. 1996) (same).

B. Ineffective Assistance Claims

1. Principles

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance "fell below an objective standard of reasonableness"; and

(2) "[A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance. Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice. Dure v. United States, 127 F. Supp. 2d 276, 279 (D.R.I. 2001) (citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir. 1993)); see also Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (summary dismissal of § 2255 motion is proper where, *inter alia*, grounds for relief are based on bald assertions).

In assessing the adequacy of counsel's performance:

> [T]he Court looks to "prevailing professional norms." A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.

Ramirez v. United States, 17 F. Supp. 2d 63, 66 (D.R.I. 1998) (quoting Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688).

Under the second prong of the Strickland test, a defendant must show actual prejudice. Id. at 693. Where his conviction follows a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Here, neither of the ineffective assistance claims asserted by Olivera has merit.

2. Number of Firearms

Olivera first claims that counsel failed (1) to adequately cross-examine a Government agent concerning the number of handguns Olivera had agreed to buy and (2) to adequately argue against the two-level increase based on the number of handguns. (Pet. Mem. at 7-9, claim 4.) This claim falls short as to both prongs of the Strickland test.

As the Government points out, Olivera pleaded guilty to possessing four firearms. (see Plea Tr. at 20, 26, 27), and thus the number of firearms was not an open issue at sentencing. Thus, any argument by counsel at sentencing that Olivera intended to purchase only two guns would border on frivolous and would have been futile. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) (no duty to pursue futile tactics or arguments). Moreover, even if only two guns were attributable to Olivera for the July 11 transaction, a third gun was attributable to him based on the June 18 drug transaction with Bartelson, thus triggering the two-level enhancement for possession of three to seven guns. See USSG 2K2.1(b)(1)(A). Thus, there was neither deficient performance nor prejudice to Olivera on this point, and this claim fails.

3. Existence of Surveillance Videotape

Olivera further claims (Pet. Mem., claim 5) that his counsel misled him concerning the existence of a surveillance videotape of his meeting with his co-defendant Camera and that this representation caused him to plead guilty, when in fact there were no videotapes. In support of this contention he points to a letter from his counsel dated September 3, 2003, advising him to plead guilty, which letter states in part: "The surveillance tapes show that you and [co-defendant] Camera met prior to Camera going to meet the ATF informant." (Pet. Mem., Attachment 23-24.)

It is questionable whether this statement alone constituted objectively deficient performance by counsel, particularly when put in context. The reference to "surveillance tapes" was ambiguous and may well have referred (albeit unclearly) to the *audio*tapes of Olivera's conversations concerning the transaction, which did exist, or counsel may have confused the audiotapes with the video surveillance tapes of the parking lot transaction.

Nevertheless, even assuming arguendo that counsel was deficient with respect to the existence of surveillance videotapes, Olivera has not shown "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59, in view of the voluminous evidence against him. As outlined in counsel's letter, this evidence included Olivera's fingerprint found on the bag

containing the cocaine, taped recordings of the calls between Bartelson and Olivera concerning the drug transaction, Olivera's verbal statement given to the police shortly after arrest admitting involvement in that transaction, and the availability of Bartelson to testify against him. The letter further explained that he could be convicted on the basis of constructive possession of the firearms given to Camera. Moreover, the meeting between Olivera and Camera just prior to the transaction was observed by law enforcement agents staked out at the 81 Hawkins Street residence, who would have provided eyewitness testimony of that meeting.

Finally, as noted <u>supra</u>, the record shows that Olivera changed his mind at least twice about whether to plead guilty, suggesting that he and his counsel had extensive discussions concerning his plea and making it unlikely that his plea was based solely - or even primarily - on the existence of the surveillance tapes. As such, this claim fails.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Olivera's motion to vacate sentence is denied and dismissed.

IT IS SO ORDERED:

WESmith

William E. Smith
United States District Judge
Date: 10/1/07